UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| CAROLYN BOWMAN | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CORBETT BOWMAN, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:26-cv-468 |
| | ) | |
| PRINCE EDWARD COUNTY, VIRGINIA, | ) | |
| | ) | |
| PRINCE EDWARD COUNTY BOARD OF SUPERVISORS, | ) | |
| | ) | |
| PRINCE EDWARD COUNTY BOARD OF ZONING APPEALS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBERT LOVE, DIRECTOR OF PLANNING AND COMMUNITY DEVELOPMENT/ ASSISTANT ZONING ADMINISTRATOR FOR PRINCE EDWARD COUNTY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

COMPLAINT

NOW COME Plaintiffs Carolyn Bowman and Corbett Bowman, by counsel, and move for judgement, declaratory judgment, and injunctive relief against Defendants Prince Edward Counry, Virginia; Prince Edward County Board of Supervisors; Prince Edward County Board of Zoning Appeals; and Robert Love, Director of Planning and Community Development/Assistant Zoning Administrator for Prince Edward County, in his official and individual capacities, on the bases and for the reasons set forth below.

1

## INTRODUCTION

After obtaining the necessary approvals from Prince Edward County, Carolyn and Corbett Bowman erected a flagpole on their real property and raised upon that flagpole a flag (*hereinafter*, the "Flag") commonly referred to as The Confederate Flag or The Confederate Battle Flag,[1] and sometimes colloquially referred to as a rebel flag. The Flag is visible from U.S. Route 460, east of the Town of Farmville. Immediately upon its raising, the Flag began to garner complaints.

In response to the complaints and less than two (2) weeks after the Flag being raised, the Prince Edward County Board of Supervisors (BOS) convened in a closed session to discuss the Flag and what to do about it. Immediately upon re-convening in regular session after the closed session, Supervisor Townsend moved to amend the Prince Edward County Virginia Zoning Ordinance (PECVZO) on an emergency basis. The emergency amendments to the PECVZO rendered both the Flag and the flagpole from which it flew nonconforming, *i.e.,* in violation of law. Subsequently, the BOS voted to approve amendments to the PECVZO that made permanent the emergency ordinances, with minor modifications.

Despite the flagpole and Flag being approved and erected prior to the amending of the County's zoning ordinances, the Defendants have and continue to pursue enforcement of the



[1] *https://en.wikipedia.org/wiki/Flags_of_the_Confederate_States_of_America*, last visited May 25, 2026, at 1:35 PM EDT.

amended PECVZO against the Bowmans through the administrative enforcement process, and through the filing and prosecution of Summons against them demanding the maximum penalties permitted by law and an order that the Flag be removed.

Defendants have and continue to target Plaintiffs due to the content of their speech in the flying of the Flag. Defendants' actions toward the Bowmans are and have been motivated by, and have the effect of suppressing the Bowmans' speech in violation of the Constitutions of the United States and the Commonwealth of Virginia.

This suit seeks:

a.      Declaration that Defendants' actions violate the First Amendment to the Constitution of the United States,

b.      Declaration that Defendants' actions violate Article I, § 12 of the Constitution of Virginia (freedom of speech),

c.      Declaration that Defendants' actions violate the Equal Protection Clause to the Constitution of the United States,

d.      Declaration that Defendants' actions violate Article I, § 1 of the Constitution of Virginia (equal protection),

e.      Judgement in favor of the Bowmans on their U.S. and Viginia constitutional claims, and an award of compensatory and punitive damages, including attorney's fees and costs, for the harm the Defendants have caused the Bowmans thereby, and

f.      Preliminary and permanent injunctive relief to prohibit the Defendants from continuing to violate the Bowmans' constitutional rights.

3

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

2.     Plaintiffs request that the Court exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside herein.

## PARTIES

4.     Plaintiff Carolyn Bowman is a person and a citizen of the Commonwealth of Virginia. Carolyn co-owns the real property in Prince Edward County, Virginia, where the flagpole and Flag are located, along with Plaintiff Corbett Bowman, her adult son.

4.     Plaintiff Corbett Bowman a person and a citizen of the Commonwealth of Virginia. Corbett co-owns the real property in Prince Edward County, Virginia, where the flagpole and Flag are located, along with Plaintiff Carolyn Bowman, his mother.

5.     Defendant Prince Edward County, Virginia is a municipal jurisdiction and corporation organized under the laws of the Commonwealth of Virginia having governmental powers.

6.     Defendant Prince Edward County Board of Supervisors is a municipal corporation organized under the laws of the Commonwealth of Virginia, with authority to enact and enforce the Prince Edward County Virginia Zoning Ordinance (*i.e.,* Appendix B – Zoning of The Code

4

of the County of Prince Edward, Virginia). *See* § 15.2-2281 of the 1950 Code of Virginia, as amended.

7.    Defendant Prince Edward County Board of Zoning Appeals *(hereinafter*, the "BZA") is a board organized under the laws of the Commonwealth of Virginia, with authority to enforce the PECVZO.

8.    Defendant Robert Love is the Director of Planning and Community Development/ Assistant Zoning Administrator for Prince Edward County, Virginia, and is sued in his individual and official capacities. Defendant Love is responsible for administering and enforcing the PECVZO, and acted under color of state law at all times relevant hereto.

**FACTUAL ALLEGATIONS**

9.    The foregoing paragraphs, numbered and unnumbered, are asserted and re-alleged as if fully set forth herein.

10.    At all times relevant hereto, Defendants acted under color of law as required by 42 U.S.C. § 1983.

**A.  ERECTION AND CONTINUOUS USE OF THE FLAGPOLE AND FLAG.**

11.    Plaintiffs Carolyn Bowman and Corbett Bowman are co-owners of real property located in Prince Edward County, Virginia, identified as Tax Map Parcel # 039-A-30, with a site address of "460 East, Left onto Bush River Drive, Entrance to Site" (*hereinafter,* the "Property").

12.    The Property is private property, *i.e.,* owned by private citizens.

13.    The Property is zoned either Agricultural residential (A2) or general commercial (C1): Prince Edward County's documentation is unclear as to which district the portion of the Property at issue is located.

14. On or about November 18, 2021, Defendant Love, responding to an inquiry on behalf of the Bowmans, stated that there were no height requirements for a flagpole and the Building Code office would need to answer whether a building permit was required.

15. On or about December 15, 2021, upon good faith application by the Plaintiffs, Prince Edward County issued Permit Number 395-2021 (*hereinafter,* the "Permit") to install a flagpole upon which to display a flag of up to 900 sq. ft. on the Property.

16. The Permit stated, "THIS PERMIT IS ISSUED IN ACCORDANCE WITH THE ORDINANCE ON BUILDING PERMITS AND THE ZONING ORDINANCE OF Prince Edward County" (emphasis in original).

17. Relying in good faith on the Permit issued by the County and the representations therein, a flagpole was erected on the Property.

18. In January 2022, the County inspected and approved the footers for the flagpole.

19. In reliance on the Permit, Plaintiffs incurred and continue to incur substantial expense, *i.e.*, in excess of $20,000, to erect and maintain the flagpole and Flag.

20. Accordingly, Plaintiffs have a vested right in the flagpole and Flag. *See* Virginia Code § 15.2-2311(C).

21. As of March 14, 2022, the decision to grant the Permit and approve the footers was not "[] subject to change, modification or reversal." *See* Virginia Code § 15.2-2311(C).

22. The flagpole was constructed as part of a monument, pictured below, "In memory of those who fought and died in the Battles of Sailor's Creek and High Bridge ...".

[This space intentionally blank.]

6



23.    The monument contains within it a time capsule.

24.    The Property also contains several graves, thereby qualifying it as a cemetery, a use permitted in the A2 and C1 districts. *See §§ 2-200.3(A)3. and 2-800.3(A)3 of the PECVZO, respectively.*

25.    On or about March 31, 2022, Plaintiffs raised the Flag, as pictured below, on the lawfully erected flagpole on the Property, in accordance with the intended use of the flagpole.



26.     The Flag is rectangular and contains 13 white stars on a blue saltire outlined in white, on top of a red background, and is also known as the battle flag of the Army of Tennessee and/or the Second Confederate Naval Jack.

27.     Like "yard and window signs[, flags] are 'a venerable means of communication,' *Id*. at 54, and 'may have no practical substitute,' *Id*. 57." *Solantic, Ltd. Liab. Co. v. City of Neptune Beach*, 410 F.3d 1250, 1259 n.9 (11th Cir. 2005), *quoting City of Ladue v. Gilleo, 512 U.S. 43, 114 S. Ct. 2038, 129 L. Ed. 2d 36 (1994)*.

28.     Display of the Flag constitutes speech. *Va. State Conference NAACP v. Cty. Sch. Bd. of Shenandoah Cty.*, 799 F. Supp. 3d 515, 553 (W.D. Va. 2025); *Patten v. Dodson*, No. 21-cv-1335-SMY, 2023 U.S. Dist. LEXIS 172071, at *10 (S.D. Ill. Sep. 26, 2023); *Cotriss v. City of Roswell*, No. 19-12747, 2022 U.S. App. LEXIS 17941, at *24-7 (11th Cir. June 29, 2022); *Hardwick v. Heyward*, 711 F.3d 426, 436 (4th Cir. 2013); *Dixon v. Coburg Dairy*, 369 F.3d 811, 823 (4th Cir. 2004); *Planned Parenthood of S.C., Inc. v. Rose*, 361 F.3d 786, 801 (4th Cir. 2004) (*Gregory concur*); *Sons of Confederate Veterans, Inc. v. C'mm'r of the Va. DMV*, 305 F.3d 241, 242-43 (4th Cir. 2002) (*Wilkinson concur and Williams concur*); *Sons of Confederate Veterans v. Vehicles*, 288 F.3d 610, 622 (4th Cir. 2002); *United States v. Blanding*, 250 F.3d 858, 861 (4th Cir. 2001); *and Crosby v. Holsinger*, 816 F.2d 162, 164 (4th Cir. 1987).

29.     The Flag constitutes protected symbolic, political speech under the First Amendment to the Constitution of the United States and Article I, § 12 of the Constitution of Virginia, as it conveys a particularized message likely to be understood by those who view it.

30.     The Flag was and is flown from a flagpole that is more than 60' in height.

31.     The Flag is approximately 600 sq. ft. in area.

8

32.     The size, *i.e.,* area, of the Flag is consistent with industry standards based upon the height of the flagpole.

33.     Moreover, the size of the flag and the height of the flagpole are specifically designed to be seen and identifiable by those traveling on the public way of U.S. Route 460.

34.     Were the flag to be smaller in area and/or the pole shorter, then the flag would not be visible and/or identifiable from Route 460: the flag would not rise above the surrounding pre-existing trees and/or would be too small to be identifiable as a Confederate Flag by those on the public way.

35.     Neither the Flag nor the flagpole create a hazard, nor are they located on or in a public way.

36.     Public streets are a traditional public forum where the government's ability to restrict speech is very limited. *McCullen v. Coakley*, 573 U.S. 464, 477, 134 S. Ct. 2518, 2529 (2014) (*citations omitted*).

37.     The Flag does not convey commercial speech.

38.     At all times relevant, the use of the flagpole and the Flag has not changed: Plaintiffs have continuously used the flagpole to display the Flag, and the use has not been discontinued, converted, and/or replaced.[2]

39.     Additionally, the flagpole, *i.e.*, the structure, has been maintained in its current structural form.

40.     At all times relevant, the size/area of the Flag has remained the same: the Flag has not been reduced or increased in size/area.

---

[2] Due to normal wear and tear, Plaintiffs have replaced the Flag on two occasions with a new Flag of the same type and size, and from the same manufacturer.

41.    At no time prior to display of the Flag did any Defendant assert that a law existed in Prince Edward County concerning the height of a flagpole and/or the size of a flag to be flown on private property in the County.

## B. STATUTORY SCHEME IN PLACE AT THE TIME OF THE FLAG'S APPROVAL AND DISPLAY.

42.    At the time of approval of the Permit to erect the flagpole at issue, at the time of all inspections, and at the time of the raising of the Flag, the PECVZO provided, in relevant part (emphasis added), that:

> Section 4-400.–. - Yard, height and setback requirements ...
> (C) **Height limitations contained in article II**[3] **of this ordinance shall not apply to** barns or silos associated with an agricultural use, church spires, belfries, chimneys, **flag poles**, or television antennae.
>
> Section–3-104. - Signs and sign placement.
> In general it is expected that an identifying sign will be associated with any commercial activity, and such signs are a permitted use within the design standards indicated in this section. Some types of signs require more detailed specification, and those are indicated as requiring a special use permit. These regulations apply to all signs and their appurtenances that are visible from the outside of buildings. No sign shall be permitted which is not necessary to the business conducted on the property. **In addition, public service noncommercial signs and markers such as highway signs and historical markers, and the flags of the United States and the commonwealth, are necessary or desirable in numerous locations, and the placement of those is not regulated by this section.** Specific terms used in this section are defined in section 6-100.[4]
>
> Section 3–104.1. - Sign placement and general provisions.
> …
> 8. Temporary signs[5] are permitted in all districts as follows:
> …
> (b) The official flag of a government, governmental agency, public institution, religious body, or other similar entity, or flags flown on a temporary basis for the

---

[3] Article II of the PECVZO, *i.e.*, § 2-100, *et seq.,* sets forth the regulations for each zoning district type.

[4] Despite the verbiage of § 3-104, "public service," "markers," "historical" and "historical markers" are not defined at § 6-100 of the PECVZO.

[5] "Sign, temporary" is defined as "[a] sign intended to be displayed for less than 30 days." PECVZO at § 6-100.

purpose of honoring holidays. Flags may also be used as part of a permanently maintained entrance or inner design feature of a residential or commercial development, provided that the number of flags is no more than three. Flagpoles must conform to the location and height requirements of the district in which they are located;

…

43.    In other words, at the time of approval of the Permit, at the time of all inspections, and at the time of the raising of the Flag, no section of the PECVZO relevant to this suit imposed a height limitation on flagpoles, nor did any portion of the zoning ordinance restrict the size of flags.

44.    The PECVZO at § 5–126.1 - Nonconformities; relationship to vested rights., provided:

Nothing in this ordinance shall impair any vested right. Pursuant to Code of Virginia, § 15.2-2307, a landowner's rights shall be deemed vested and shall not be affected by the subsequent amendment of the zoning ordinance if all of the following occur:
1. The landowner obtains or is the beneficiary of a significant affirmative governmental act.
2. The landowner relies in good faith on a significant affirmative governmental act.
3. The landowner incurs extensive obligations, or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.

45.    The PECVZO at § 5–126.3 - Nonconforming uses of buildings, structures or land, provided:

(A)    Where, at the effective date of this ordinance or amendments thereto, lawful use exists of buildings, structures, or land, individually or in combination, which use is no longer permissible under the terms of this ordinance as enacted or amended, such use may be continued provided:
1. The use is not discontinued for more than two years.
2. The use is not converted or replaced, in whole or in part by a use permitted in the district regulations.
3. The building or structures containing the nonconforming use are maintained in their then structural condition.
(B)    No building or structure conforming to the requirements of this ordinance shall be erected in connection with the nonconforming use of land unless the building or structure was damaged or destroyed by a catastrophic event. However, a substantially damaged structure, if rebuilt, must be rebuilt in compliance with current floodplain regulations.

11

46.     The PECVZO at § 5–126.5 - Nonconforming buildings and structures., provided,

in relevant part:

(A)     Where, a lawful building, or structure exists at the time of the adoption or amendment of this ordinance, which could not be built under the terms of this ordinance by reasons of restrictions on area, bulk, lot coverage, height, yards, or other characteristics of the building or structure, or its location on a lot, such building may be continued so long as it remains otherwise lawful provided:
1.  No building or structure shall be enlarged in any way which increases or extends it nonconformity.

2.  Any building or structure which is moved for any reason, for any distance, shall thereafter conform to the regulations of the district in which it is located after it is moved.

3.  Any building or structure substantially damaged or destroyed by a natural disaster may be repaired, replaced, or rebuilt as provided in this section. To the extent possible, the nonconforming features of the building shall be eliminated upon repair, replacement or reconstruction. A rebuilt, repaired, or reconstructed structure shall comply with current floodplain and dam break inundation zone regulations.

47.     The PECVZO at § 6-100 (Definitions), provided, in relevant part:

ALTERATION. Any change or rearrangement in the supporting members of an existing building, such as bearing walls, columns, beams, girders or interior partitions, or any enlargement or reduction of a building or structure, whether horizontally or vertically, or the moving of a building or structure from one location to another.

FLAG. A piece of cloth or similar material, typically oblong or square, attachable by at least one edge to a pole or rope or by one side to a surface, and used as the symbol or emblem of a country or institution or as a decoration during public festivities.

FLAGPOLE. A pole used for flying or otherwise displaying a flag.

STRUCTURE. Anything that is constructed or erected with a fixed location on the ground, or attached to something having a fixed location on the ground, including but not limited to buildings, signs, manufactured homes and swimming pools. Walls and fences shall not be deemed structures except as otherwise specifically provided in this ordinance.

48.     Virginia Code § 15.2-2307 provides in relevant part (and provided at all times

relevant hereto),

A. Nothing in this article shall be construed to authorize the impairment of any vested right. **Without limiting the time when rights might otherwise vest, a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act**. …

**C. A zoning ordinance may provide that land, buildings, and structures and the uses thereof which do not conform to the zoning prescribed for the district in which they are situated may be continued only so long as the then existing or a more restricted use continues and such use is not discontinued for more than two years, and so long as the buildings or structures are maintained in their then structural condition; and that the uses of such buildings or structures shall conform to such regulations whenever, with respect to the building or structure, the square footage of a building or structure is enlarged, or the building or structure is structurally altered as provided in the Uniform Statewide Building Code (§ 36-97 et seq.). ….**

**D. Notwithstanding any local ordinance to the contrary, if (i) the local government has issued a building permit, the building or structure was thereafter constructed in accordance with the building permit, and upon completion of construction, the local government issued a certificate of occupancy or a use permit therefor, (ii) a property owner, relying in good faith on the issuance of a building permit, incurs extensive obligations or substantial expenses in diligent pursuit of a building project that is in conformance with the building permit and the Uniform Statewide Building Code (36-97 et seq.) or** (iii) the owner of the building or structure has paid taxes to the locality for such building or structure for a period of more than the previous 15 years, **a zoning ordinance shall not provide that such building or structure is illegal and subject to removal solely due to such nonconformity**. Such building or structure shall be nonconforming. A zoning ordinance may provide that such building or structure be brought in compliance with the Uniform Statewide Building Code, provided that to do so shall not affect the nonconforming status of such building or structure. **If the local government has issued a permit, other than a building permit, that authorized construction of an improvement to real property and the improvement was thereafter constructed in accordance with such permit, the ordinance may provide that the improvements are nonconforming, but not illegal.** […].

Virginia Code § 15.2-2307 (*emphasis added*).

49.     Section 15.2-2307(C) refers to Virginia Code § 36-97, *et seq.* for determination of what constitutes a structural alteration that would require a building or structure to conform to an updated zoning ordinance. Virginia Code § 36-97 defines, and has defined at all times relevant hereto, "structure" as

an assembly of materials forming a construction for occupancy or use, including stadiums, gospel and circus tents, reviewing stands, platforms, stagings, observation towers, radio towers, water tanks, underground and aboveground storage tanks, trestles, piers, wharves, swimming pools, amusement devices, storage bins, and other structures of this general nature but excluding water wells. The word "structure" shall be construed as though followed by the words "or part or parts thereof" unless the context clearly requires a different meaning. …

50.    Virginia Code § 15.2-2311(C), provides (and has provided at all times relevant hereto):

In no event shall a written order, requirement, decision or determination made by the zoning administrator or other administrative officer be subject to change, modification or reversal by any zoning administrator or other administrative officer **after 60 days have elapsed from the date of the written order, requirement, decision or determination where the person aggrieved has materially changed his position in good faith reliance on the action of the zoning administrator or other administrative officer** ….

Virginia Code § 15.2-2311(C) (*emphasis added*).

## C.  DEFENDANTS' UNCONSTITUTIONAL ZONING ORDINANCE AMENDMENTS TO ATTACK THE FLAG.

51.    Within days of the Flag being raised upon the flagpole, County officials began to receive complaints about the Flag.

52.    All complaints pertained to the message perceived to be conveyed by the Flag, *i.e.,* its speech.

53.    Examples of the Complaints included:

a.    An email from Pam Wallace, Interim Executive Director of the Crossroads

Community Services Board <pwallace@crossroadscsb.org>, to several Prince

Edward County officials (and others), dated April 4, 2022: stating, in part,

Good Afternoon Board Members,
Attached are pictures of a new confederate flag that was erected on the edge of our Bush River (Admin) complex on 460 in Farmville. The flag is very large and when you turn onto Bush River Drive and make the first curve, it stands on the hill in very plain sight. I have received several complaints today from staff asking what can be done.
…

I have sent out a mass email to all agency staff to let them know the flag is not a representation of Crossroads and we are not responsible for this fla' as we don't own that land. I also let them know that we will work on trying to have it removed by speaking with the owner but I have heard she is not in favor of taking it down.

Could we possibly have a Board Member (or more) and/or Dr. Moore go with me to talk to her about it? I think we need to make an effort to have her relocate it, even though I am fearful she will not.

I am also fearful of what the public will say/think with this flag so close to Crossroads property. Ou' name hasn't been in the newspaper for a few months but this might change that.

It a mess...

Thank you for any thoughts or ideas about this situation. Make sure to see the attached pictures to see how large it really is.

    b.   An email from Sarah Edwards <sjedwards106@gmail.com>, to

       board@co.prince-edward.va.us,[6] dated April 5, 2022: stating, in part,

If you live in or near Farmville, or if you drive through Prince Edward 'ounty, you've likely seen the massive confederate flag that was erected over the first weekend in Apri', 2022. It's hard to miss as it can be easily seen from Highway 460.

While there is much discussion about the origin of the confederate flag as we know it today' & what it's meant historically, I think we can all ag'ee that it's come to be a representation of bigotry, evil, hatred, narrowmindedness & racism. Just like the swastika was considered a positive symbol long before it was adopted by Adolf Hitler, what began as a symbol of well-being, life, & good luck is now universally recognize as a symbol of evil & hatred & is even illegal in many countries. The confederate flag is no different.

My question is this. When did Farmville become a place that supports hatred & ignorance? When did this community become one to drive people away? When did this community become one to instill fear in its citizens? Because t'at is what's being advertised by this flag, especially one as large as this & in this particular location. It was clearly erected by people who wish to alienate & spread hate. If this flag was smaller, & simply'in someone's front yard, while I would still strongly disagree with it, I could chalk it up to Freedom of Speech & go about my business of spreading kindness & love. The hate group, & the individuals who associate with it, who erected this massive flag on this extremely tall flagpole so close to a major highway clearly wants to drive out & keep out certain people" & 'o say "You're not we"come here," a sentiment of evil if I ever heard one.

…

… Those who seek to promote fear, hatred, & evil should keep their racist symbols in their own narrow minded homes, while the rest of us will serve Farmville in love.

---

[6] https://www.co.prince-edward.va.us is the official website for Prince Edward, County, Virginia, and bears the County seal. The contact us portion of the Prince Edward County Board of Supervisors website list email address: board@co.prince-edward.va.us.

c.  An email from Lisa M. Williams <agreatescapespalon@gmail.com>, to

board@co.prince-edward.va.us, dated April 13, 2022, which stated:

I'm writing concerning the Confederate Flag that has been erected on 460, next to Crossroads. I feel this flag, this symbol of hate, gives the wrong idea about our town of Farmville. My family is a mixed race, blended family. How do I explain to my children why our town would raise the Confederate flag? That flag is a symbol of hate, division, and racism. It became a symbol that represented those that supported slavery. It makes me so angry every time I have to drive 'ast it.
I'm pretty sure seeing that flag will deter some people from coming to Fa'mville. It's going to tarnish all the positive that has been happening over the years.
We need to take the flag down. If a flag should be flown, it should be the American Flag. The flag that represents a united country, a united town.

54.    Beverly Booth, who at the time was a member of the Prince Edward County BOS responded to Wallace's email, writing, "Good Morning All: My County Administrator, Doug Stanley, is looking into this matter! He is out of the office today. I will meet with him in the morning to discuss if there is anything the PE Board of Supervisors can do. Best regards, Beverly."[7]

55.    Thereafter, on or about April 11, 2022, Defendant Love, acting under color of state law, issued a notice of violation to Plaintiffs for purportedly violating Prince Edward County Code Section 5-104, and demanded that the Plaintiffs remove the flagpole and, consequently, the Flag or face "further zoning actions which may include enforcement proceedings with violations subject to criminal fines, penalties and other remedies."

56.    Specifically, ignoring that Plaintiffs has obtained the Permit, Defendant Love's Notice stated, in part,

Prince Edward County Code Section 5-104 requires a zoning permit "for the erection, construction, reconstruction, moving, adding to, or alteration of any structure, or the establishment of any land use." Furthermore, the Zoning Ordinance defines a "STRUCTURE" as "anything that is constructed or erected with a fixed location on the ground, or attached to something having a fixed location on the ground, including but not

---

[7] Email from bboothbos1@gmail.com, dated April 4, 2022.

16

limited to buildings, signs, manufactured homes or swimming pools." A flagpole meets this definition of "STRUCTURE" and thus requires a zoning permit under the zoning ordinance, which the flagpole has not received.

57.    The next day, April 12, 2022, at the Board of Supervisors meeting, the County Administrator's update included this bullet point:

Board and staff have heard from citizens regarding a large flagpole erected on East Third Street. The flagpole was erected by the Virginia Flaggers[8] on private property. Since the flag's installation, County staff has received calls and emails on how the flagpole was permitted to be erected at such a height and size. Review of the County Codes and ordinances that govern such a land use and discussion with our legal counsel, it was determined that current 60-feet tall flagpole is in violation of the County Zoning Ordinance regulations as both an unauthorized accessory use in a C-1 Commercial district. As a structure exceeding the height limitation, a Notice of Violation was issued to the property owner and they have 30 days to bring the property into conformance with the Ordinance including the removal of the flagpole.

*Meeting Minutes of the Prince Edward County Board of Supervisors, April 12, 2022, at 35.*

---

8    The Virginia Flaggers were organized on September 5, 2011. What began with just a few dedicated Southerners, has now grown to include hundreds of people, from all over the country, who have joined us in protesting against Heritage offenses in Richmond, and Virginia… and beyond!
WHAT IS A FLAGGER?
    When needed, flaggers stand with our flags against those in opposition in a peaceful, yet forceful manner, to educate and inform the general public, and in open and visible protest against those who have attacked us, our flags, our ancestors, or our Heritage.
    Flaggers speak for those who have no voice. We relay a message of Honor, Dignity, Respect, and Heritage to those who never knew, or to those who have forgotten, and to attempt to reach those who refuse to hear.
    Our weapon is the Confederate Battle Flag. Our enemies are those who worship ignorance, historical revisionism and Political Correctness.
    We take pride in taking a stand for the Cause. For this Cause, we call others to flock to the banner of our ancestors, take up their flags, and join us in battle, for OUR TIME IS NOW.
    The Va Flaggers reject any person or group whose actions tarnish or bring dishonor upon the Confederate soldier or his reason for fighting, including those groups and persons using our cherished flag as a symbol for their own dishonorable purposes.

*https://www.facebook.com/TheVirginiaFlaggers/directory_privacy_and_legal_info*, last visited May 25, 2026, at 8:36 PM.

17

58.     At that same meeting, Defendant BOS adopted, unanimously, an Emergency Ordinance,

> to Amend Appendix B of the Prince Edward County Code (Zoning) to Amend Sections 2-100, [2-200], 2-800, 2-900, 2-1000, 3-104.1 and 4-400.5 to Provide a Maximum Size for Flags and to Amend the Height Requirements for Flagpoles to Limit the Height to 20' and Allow for a Taller Flagpole in the A1, A2, C1, I1, and CR Zoning Districts Upon the Issuance of a Special Use Permit,"

and referred the amendment to the Planning Commission (*hereinafter*, the "Commission") for formal consideration.[9] *Id.* at 43.

59.     Specifically, the amendments were:[10]

**Sec. 2-100. - A1 agricultural conservation district.**

(B)     The following uses are permitted by special use permit in the A1 agricultural conservation district, subject to all other applicable requirements contained in this ordinance. An asterisk (*) indicates that the use is subject to additional, modified or more stringent standards as listed in article III, Use and Design Standards.

7.     Miscellaneous use types:
Aviation facilities
Outdoor gathering *
Shooting range, outdoor
Tower *
Utility services, major
**Flagpoles exceeding 20' in height**

**Sec. 2-200. - A2 Agricultural residential district.**

(B)     The following uses are permitted by special use permit in the A2 agricultural residential district, subject to all other applicable requirements contained in this ordinance. An asterisk (*) indicates that the use is subject to additional, modified or more stringent standards as listed in article III, Use and Design Standards.

7.     Miscellaneous use types

---

[9] Virginia Code § 15.2-2285(B) states, in relevant part,
> No zoning ordinance shall be amended or reenacted unless the governing body has referred the proposed amendment or reenactment to the local planning commission for its recommendations.

[10] Amendments in the form of additions are in **bold** and **underlined**. Amendments in the form of deletions are indicated by ~~strikethrough~~.

Aviation facility
Outdoor gathering *
Shooting range, outdoor
Tower *
Utility services, major
**Flagpoles exceeding 20' in height**

**Sec. 2-800. - C1 general commercial district.**

(B)    The following uses are permitted by special use permit in the C1 general commercial district, subject to all other applicable requirements contained in this ordinance. An asterisk (*) indicates that the use is subject to additional, modified or more stringent standards as listed in article III, Use and Design Standards.

   7.    Miscellaneous use types:
        Aviation facility
        Outdoor gathering *
        Parking facility, surface/structure
        Tower *
        Utility service, major
        **Flagpoles exceeding 20' in height**

**Sec. 2-900. - I1 general industrial district.**

(B)    The following uses are permitted by special use permit in the I1 general industrial district, subject to all other applicable requirements contained in this ordinance. An asterisk (*) indicates that the use is subject to additional, modified or more stringent standards as listed in article III, Use and Design Standards.

   7.    Miscellaneous use types:
        Tower *
        **Flagpoles exceeding 20' in height**

**Sec. 2-1000. - CR college residential district.**

(B)    The following uses are permitted by special use permit in the CR college residential district, subject to all other applicable requirements contained in this ordinance. An asterisk (*) indicates that the use is subject to additional, modified or more stringent standards as listed in article III, Use and Design Standards.

   7.    Miscellaneous use types:
        Tower *
        **Flagpoles exceeding 20' in height**

**Sec. 3-104.1. - Sign placement and general provisions.**

1.      No sign may be placed within the right-of-way of a highway or street, other than duly authorized governmental signs.
2.      No sign may be placed off the immediate platted lot of the business or civic use without a special use permit.
3.      No sign may be placed so as to impair vision at an intersection or sharp highway curve.
4.      All signs shall be maintained in good condition at all times. The pedestal of any sign may not be wood unless it is clad with vinyl or metal, painted, or stained.
5.      No sign shall be painted on or attached to any trees, rocks, fence posts, utility poles, or similar structures or objects.
6.      The light from any illuminated sign shall be so directed, shaded, or shielded that the light intensity or brightness shall not adversely affect surrounding or facing premises, nor interfere with the safe vision of operators of moving vehicles. Light shall not be permitted to shine or reflect on or into any residential structure.
7.      Storefront windows: no more than 25 percent of the glass area may be covered by signs. This is recommended by emergency response personnel to provide sight into building.
8.      Temporary signs are permitted in all districts as follows:
        (a)     Temporary signs warning of construction, excavation, or other hazard, for as long as the hazard shall exist;

        (b)     The official flag of a government, governmental agency, public institution, religious body, or other similar entity, or flags flown on a temporary basis for the purpose of honoring holidays. Flags may also be used as part of a permanently maintained entrance or inner design feature of a residential or commercial development, provided that the number off flags is no more than three. **The maximum area for a flag is 40 square feet.** Flagpoles ~~must conform to the location and height requirements of the district in which they are located~~ **shall have a maximum height of 20 feet except in the A1, A2, C1, I1 and CR districts in which a taller flagpole will be allowed with the issuance of a special use permit**;

        (c)     **Flags attached to a building or other structure shall not project beyond the façade of the building, extend no more than 20 feet from the roofline and in no case exceed the maximum permitted height of the building upon which it is located;**

        (d)     **Flags or cloth or other flexible material, used to attract attention to a commercial use or activity and attached to a pole shall be included in the definition of and calculation of freestanding signage on the property;**

        (~~c~~**e**)     Signs in the nature of seasonal decorations, clearly associated with a national, local, or religious holiday;

20

(d**f**) Temporary signs ~~such as event signs or political election~~ signs must be removed within 20 days of the event or election.

**9.**     **Any business closing operations must remove its signs within 12 months.**

**Sec. 4-400.5. - Yard, height and setback requirements.**

(A)     The lot area and yards required for any use or structure shall be permanently maintained, and shall not be counted as the required lot area or yards for any other use or structure.

(B)     Required yards shall remain free of all uses or structures except for the following:

1.     Fences, walls and landscaping shall be allowed in yards provided that sight triangles are maintained per section 4-400.20. Driveways and parking areas shall also be allowed.

2.      Patios and stoops shall be allowed within all required setback areas. Decks shall comply with all district setback requirements.

3.     Accessory structures shall be allowed in accord with the regulations for such structures.

(C)     Height limitations contained in article II of this ordinance shall not apply to barns or silos associated with an agricultural use, church spires, belfries, chimneys, ~~flag poles~~, or television antennae.

*Meeting Minutes of the Prince Edward County Board of Supervisors*, April 12, 2022, at 43-6.

60.     These amendments to the PECVZO failed to comply with Virginia Code § 15.2-2285: the amendments were not "referred … to the local planning commission for its recommendations," nor "[b]efore approving and adopting any zoning ordinance or amendment thereof, [did] the governing body … hold at least one public hearing thereon, …."  Virginia Code § 15.20-2285(B) and (C).

61.     These amendments to the PECVZO also failed to comply with Virginia Code § 15.2-2204, which states in relevant part,

notice of intention to [amend the zoning ordinance was not] published twice in some newspaper published or having general circulation in the locality, with the first notice

appearing no more than 28 days before and the second notice appearing no less than five days before the date of the meeting referenced in the notice; [] The notice shall specify the time and place of hearing at which persons affected may appear and present their views.

Virginia Code § 15.2-2204(A).

62.    No justifiable, compelling government interest was articulated by the Board at the Defendant BOS meeting held on April 12 to justify the emergency ordinance, nor did any exist.

63.    These ordinance amendments regarding flagpole height and flag size had and have the effect of ensuring that any flag that the Bowmans seek to fly on the Property is not visible from their property to the public, *e.g.*, passersby on U.S. Route 460.

64.    On or about May 10, 2022, Plaintiffs filed with Defendant Prince Edward County Board of Zoning Appeals (BZA) an application for appeal of Defendant Love's April 11, 2022, Notice of Violation, alleging that Plaintiffs' had a right to keep the flagpole on their property pursuant to Virginia Code § 15.2-2311(C), and that the Defendants enforcement actions appeared to be motivated by concerns about the Flag flown from the flagpole, *i.e.*, the content of the landowner's speech, in violation of the First Amendment to the United States Constitution and Article I, § 12 of the Virginia Constitution.

65.    At a meeting held by the Prince Edward County Planning Commission on May 17, 2022, the Commission considered an amendment to amend the PECVZO to "limit [] the size of flags at 40 square feet (5'x8') and to limit the maximum height of flagpoles in all districts to 20' but allow for an exception in the A-1, A-2, C-1, I-1, and CR zoning districts upon the issuance of a special use permit."[11]

---

[11] It was noted at the meeting that "[t]he proposed maximum height was identified by looking at what is commercially available on the market."

22

66.     Notably, at the May 2022, meeting before the Planning Commission, County Administrator Douglas P. Stanley, said that "anything existing, as long as it is legal, would be grandfathered in. .... There is an appeal on a zoning Notice of Violation the other flag that was discussed earlier which is a separate issue. ... [A]ny other legally standing flagpole would be grandfathered under the ordinances ...."

67.     The Planning Commission recommended approval of the following to the BOS:

the Ordinance Amendment to amend and re-ordain Appendix B of the Prince Edward County Code (Zoning) Sections 2-100, 2-200, 2-800, 2-900, 2-1000, 3-104.1 and 4-400.5 to provide a maximum size for flags [of 40-square feet ... or five (5) feet by eight (8) feet] and to amend the height requirements for flagpoles to limit the height to 20' and allow for a taller flagpole in the A-1, A-2, C-1, I-1, and CR Zoning Districts upon the issuance of a Special Use Permit.

68.     On May 17, 2022, Defendant BOS approved the amendment as recommended by the Planning Commission.

69.     On June 21, 2022, Defendant BZA accepted and approved Plaintiffs' appeal of the April 11, 2022, Notice of Violation issued by Defendant Love, finding that the Bowmans' rights in the flagpole had vested, and deemed the notice of violation null and void/invalid.

70.     On July 21, 2022, Defendant BOS filed a Petition for Writ of Certiorari and Reversal of BZA in the Prince Edward County Circuit Court seeking judicial review of the June 21, 2022 decision of the Defendant BZA, and asked the Court to reverse the BZA's decision, restrain the alleged zoning violations of Plaintiffs, and grant further relief as required. *In re: June 21, 2022, Decision of the Board of Zoning Appeals of the County of Prince Edward, Virginia*, Prince Edward County Circuit Court, Case No. CL22000306-00.

71.     By Final Order dated March 8, 2023, the Prince Edward County Circuit Court denied Defendant BOS' request that it reverse the decision of Defendant BZA, and affirmed the

decision of Defendant BZA, finding that Plaintiffs' rights in and to the flagpole installed on their property had vested in accordance with Virginia Code § 15.2-3211(C). *Id*.

72.    On or about March 20, 2023, Defendant Love, acting under color of state law, issued a notice of violation to Plaintiffs for purportedly violating Prince Edward County Code Section 3-104.1(8)(b), as amended, and demanded that Plaintiffs remove the Flag, or face "further zoning actions which may include enforcement proceedings with violations subject to criminal fines, penalties and other remedies."

73.    On or about March 21, 2023, Defendant Love, acting under color of state law, issued another notice of violation to Plaintiffs for purportedly violating Prince Edward County Code Section 3-104.1(8)(b), as amended, and demanded that Plaintiffs remove the Flag, or face "further zoning actions which may include enforcement proceedings with violations subject to criminal fines, penalties and other remedies."

74.    On March 22, 2023, Defendant BOS noted its appeal to the Virginia Court of Appeals of the Prince Edward County Circuit Court's Final Order dated March 8, 2023, regarding the flagpole.

75.    On April 20, 2023, Plaintiffs filed an application for appeal of the March 21, 2023 Notice of Violation to Defendant BZA, alleging, *inter alia*, that Plaintiffs' right to install and maintain the flagpole at issue and a 900-square-foot flag had vested, and that the Notice of Violation appeared to be motivated by concerns about the specific flag raised on the flagpole – that is, the contents of the Plaintiffs' free speech – in violation of Plaintiffs' rights under the First Amendment to the United States Constitution and Article I, § 12 of the Virginia Constitution.

76.    At a meeting held by Defendant BOS on June 13, 2023, Defendant Love stated, *inter alia*, that the BOS

24

**requested that staff review the existing Zoning Ordinance as it related to flags in the Spring of 2022 after numerous calls and emails to members of the Board and Planning Commission from County residents**. After researching how other localities in the region regulate flags, an emergency ordinance was drafted. The ordinance placed a maximum limit on the size of flags at 40 square feet (5'x8') and a maximum height of flagpoles in all districts of 20 feet. There is an allowance for the issuance of a special use permit for a taller pole in the A1, A2, C1, I1 and CR zoning districts but excluded all residential zoning districts from the option for a taller pole.

The Board of Supervisors adopted the Emergency Ordinance at its April 12, 2022 Meeting. Section 15.2-1527 of the Code of Virginia outlines the procedures for adoption of an emergency ordinance. The emergency ordinance may be adopted without prior notice; however, no such ordinance shall be enforced for more than 60 days unless readopted in conformity with the provisions of the code. As a zoning ordinance amendment, it required that the ordinance be sent to the Planning Commission for a public hearing and recommendation. To comply with the time requirement, the Board of Supervisors directed staff to advertise a joint public hearing with the Planning Commission on May 12, 2022, at which the zoning ordinance amendment was adopted.

(emphasis added).

77.     At the June 13, 2023, BOS meeting, the Board adopted another emergency ordinance, Emergency Ordinance Option 4, to amend Appendix B of the Prince Edward County Code (Zoning), Section 3-104.1(9)(a) (Sign placement and general provisions, Flags and Flagpoles), to add language that flags be subject to an overall site square footage of up to a maximum of 120 total square feet:

The official flag of a government, governmental agency, public institution, religious body, or other similar entity, or flags flown on a temporary basis for the purpose of honoring holidays. Flags may also be used as part of a permanently maintained entrance or inner design feature of a residential or commercial development, provided that the number of[] flags is no more than three. The maximum area ~~for a flag is 40 square feet~~ **for flags shall be subject to an overall maximum site allowance of 120 square feet.** Flagpoles shall have a maximum height of 20 feet except in the A1, A2, C1, I1 and CR districts in which a taller flagpole will be allowed with the issuance of a special use permit.[12]

---

[12] The amendment is in bold and underlined; deleted language is stricken through.

25

78. The amendment adopted at the June 13, 2023, BOS meeting was referred to the Planning Commission for formal consideration.

79. No justifiable, compelling government interest was articulated by the Board at the Defendant BOS meeting held on June 13 to justify the emergency ordinance, nor did any exist.

80. On July 18, 2023, the Planning Commission held a meeting and made recommendations to the proposed ordinance amendments as follows:

9. *Flags and Flagpoles:*

~~*The official flag of a government, government agency, public institution, religious body, or other similar entity, or flags flown on a temporary basis for the purpose of honoring holidays. Flags may also be used as part of a permanently maintained entrance or inner design feature of a residential or commercial development provided that*~~ **Flags are defined as a temporary sign and are considered permitted temporary sign under the following conditions:**

(a) ~~*The official flag of a government, governmental agency, public institution, religious body, or other similar entity, or flags flown on a temporary basis for the purpose of honoring holidays. Flags may also be used as part of a permanently maintained entrance of inner design feature of a residential or commercial development, provided that The number of flags is*~~ **shall be** ~~no more than three~~ **per parcel.**

(a) *The maximum area* ~~for a flag is 40 square feet.~~ **for flags shall be subject to an overall maximum site allowance of 120 square feet.** *Flagpoles shall have a maximum height of 20 feet except in the A1, A2, C1, I1 and CR districts in which a taller flagpole* **and larger flag** *will be allowed with the issuance of a special use permit;*

(b) *Flags attached to a structure shall not project beyond the façade of the building or _more than 20 feet from the roofline in any direction and in no case exceed the maximum permitted height of the structure upon which it is located;*

(c) *Flags or cloths or other flexible material, used to attract attention to a commercial use or activity and attached to a pole shall be included in the definition of and calculation of freestanding signage on the property;*

**(d)** **Temporary flags located at a cemetery of no more than one (1) square foot shall be exempted from these requirements.**[13]

81.    On July 18, 2023, Defendant BZA affirmed Defendant Love's March 21, 2023, Notice of Violation.

82.    At a meeting of Defendant BOS held on August 8, 2023, the BOS approved an Ordinance Amendment,

> to amend and re-ordain Appendix B of the Prince Edward County Code (Zoning) Section 3-104.1 to amend the language for temporary signs to provide for a maximum area for flags of 120 square feet, Section 3-104.1.9(d), to include the Planning Commission recommendation for the exemption: "Temporary flags located at a cemetery of no more than one (1) square foot shall be exempted from these requirements," and to Section 6-100 to add definitions for signs, flagpoles, temporary signs, and structures [...].

83.    BOS Chairman introduced the public hearing portion of the meeting concerning the proposed amendments by saying, in part,

> The Prince Edward County Board of Supervisors requested that staff review the existing Zoning Ordinance as it related to flags in the Spring of 2022 after numerous calls and emails to members of the Board and Planning Commission from County residents. After researching how other localities in the region regulate flags, an emergency ordinance was drafted. The ordinance placed a maximum limit on the size of flags at 40 square feet (5'x8') and a maximum height of flagpoles in all districts of 20 feet. There is an allowance for the issuance of a special use permit for a taller pole in the A1, A2, C1, I1 and CR zoning districts but excluded all residential zoning districts from the option for a taller pole.

Prince Edward County Board of Supervisors, August 8, 2023, Meeting Minutes at 5.

84.    The Minutes further noted that,

> Several speakers spoke out during public participation at the May 9, 2023 regular meeting concerning the maximum allowed size of flags and asked the Board to consider exempting the American flag. Since the County can only regulate the size of flags, but not flag content, it cannot exempt any particular flag regardless of what it may signify. To do so has been seen by the courts as a violation of constitutional rights.

*Id.*

---

[13] The proposed amendments are in bold and underlined; proposed deletions are stricken through.

27

85.    During the public comment portion of the meeting it was apparent that the citizens understood the Board's actions in adopting emergency zoning ordinance amendments and now permanent coming ordinance amendments were  directed at inhibiting the Plaintiffs' Flag in particular, *i.e.,* to prevent them from continuing to exercise their right to free expression/speech through the display of the Flag, to wit:

…
Dr. Peter Gur, District 1, expressed his support for Option 3; he said Prince Edward County has a colorful historical history, in April 1865, General Lee retreated from Farmville. In April 1951, Barbara Johns, and in 1954, Brown vs. Board of Education, the Supreme Court said separation isn't legal. Now we are here regarding the American glad [sic] and to unite races, genders and allegiance so the County can move in the correct direction.

Cindy Koether, Lockett District, stated [citizen] rights come from the Creator and are in the Bill of Rights and Constitution. She questioned the arbitrary size of the flag and why the government gets to decide how much freedom of speech a citizen may have. She said citizens do not want more taxpayer money wasted to take away their rights.

Mary Prevo, District 1, stated that the flag is too big, too tall, and it's all you see. The placement of this flag welcomes people to Farmville in a big way. She said with the coming commercial projects, it is a good time to think about height restrictions of signs on private property. She said given how that flag makes many people feel, then she would like it to not be there at all. Mrs. Prevo said this is home and was the easiest place she had ever moved to, but the flag says she is not welcome here. ….
…
Brandon Whitehead, Heights, asked if anyone asked Mrs. Bowman to replace the Confederate flag with an American flag. He said we are fighting over something that doesn't make a difference. He said we could have saved a lot if we'd have just asked questions.

Supervisor Watson stated that he knows she was asked several times to take it down, that he knows several people that have asked her. He said he doesn't think any of the Board members have shown her any disrespect.
…
Bemeché Hicks, Lockett District, said the flag issue has gotten out of hand. He said we saw what happened on January 6th and make sure that doesn't happen in Prince Edward County. He said that in the 1960s, when we went 14 years without a school, his grandfather had to "put up his property to sign a petition to say "Separate but equal," to get schools built for us, while Prince Edward County had a meeting and went and took their money out of the bank for Prince Edward County for the building of the Prince Edward Academy. We better make sure that that flag doesn't represent a movement in this County and beyond."

Jan Magruder, Buffalo District, stated that it has been said the data center would be deterred by certain flags in our County. She asked if they would be more deterred after

28

seeing the news articles about what has happened when someone gets a permit, jumps through all the hoops required, and if the Board doesn't like some aspect, it will go into emergency meetings and change the law, and spend taxpayer money to fight in the courts. She said that prospective business would be more upset with that fact. She said there is tremendous growth in other counties but this is not the case in Prince Edward County "because certain members on this Board are trying to crucify the rights of its citizens." She questioned why, if a landowner has obtained permits and had it inspected, the County has disregarded their rights.

Robin Simpson, Prospect District, stated she does not find the Confederate flag offensive, it represents southern history. She spoke highly of Carolyn Bowman and said she was not asked to replace her flag. She said the Board doesn't have the right to limit the number or the size of flags.

…

*Id.* at 6-8.

86.     After the public comment period, members of the Board of Supervisors spoke to the proposed zoning ordinance amendments.

87.     The Minutes reflect that

Chairman Gilliam stated he has considered this issue at length. He said he is proud of all veterans, that they followed this flag when someone was trying to oppress someone else, the veterans went to help. The Civil War was fought and lives were lost. At the end of the Civil War, Federal troops respected Southern troops and lined up and saluted them. He said the Civil War was settled in 1865 and everyone went home. Chairman Gilliam said all are citizens and all in the same boat together. He said he would like to see [the American] flag flown everywhere. The dilemma that we have been set upon is that when someone pushes the limit that offends or hurts someone, and it doesn't matter if it's the County, or churches, or the workplace, that if everybody does the right thing up front, everyone will say thank you. Chairman Gilliam said that is the end goal at the end of the day, that he doesn't want anybody to be oppressed, hurt, pushed aside, ignored – that's not why we are here on this Earth. He said he is thankful for his family and he is blessed. He said the Board is working to get everything smooth, to not hurt anyone, and asked everyone to think about what he has said. He closed by saying the exemption for the cemetery is a fine thing.

*Id.* at 8.

88.     Supervisor Jones stated,

[T]he American flag represents the Constitution of the United States, and the First Amendment was created to protect free speech. He said this law was enacted in response to one particular flag and he cannot support the ordinance that, in some people's eyes,

29

tramples on the rights of American people. He entreated the other Board members to vote against limiting free speech.

*Id.*

89.     No justifiable, compelling government interest was articulated by the Board at the Defendant BOS meeting held on August 8 to justify the emergency ordinance, nor does any exist.

90.     Notably, the zoning ordinance amendments ultimately adopted provide for issuance of a special use permit to exceed the flagpole height. *See* PECVZO § 3-104.1(9)(a).

91.     On August 17, 2023, Plaintiffs filed a Petition for Writ of Certiorari and Reversal of Board of Zoning Appeals in the Prince Edward County Circuit Court, seeking judicial review of the decision of Defendant BZA made on July 18, 2023, regarding the Flag, affirming the Notice of Violation issued by Defendant Love to Plaintiffs in March 2023. *In re: July 18, 2023 Decision of the Board of Zoning Appeals of Prince Edward County, Virginia*, Prince Edward Circuit Court, Case No. CL23000388-00.

92.     On May 30, 2024, the Prince Edward County Circuit Court dismissed Plaintiffs' Petition for Writ of Certiorari and Reversal of Board of Zoning Appeals for lack of jurisdiction, pertaining to the Flag. *Id*.

93.     On June 13, 2024, Plaintiffs noted their appeal to the Court of Appeals of Virginia from the Circuit Court's Final Order, pertaining to the Flag, entered on May 30, 2024. *Id*.

94.     On April 8, 2025, the Court of Appeals of Virginia affirmed the March 8, 2023, decision of the Prince Edward County Circuit Court finding that the Bowmans' rights had vested in the flagpole, *i.e.*, its height. *See Board of Supervisors of Prince Edward County, Virginia v. Carolyn F. Bowman and Corbett W. Bowman*, Court of Appeals of Virginia, Record No. 0490-23-2.

95.     On August 19, 2025, the Court of Appeals of Virginia affirmed the May 30, 2024, decision of the Prince Edward County Circuit Court, finding that the Bowmans had failed to name the proper party on appeal to the circuit court from the decision of the Board of Zoning Appeals regarding the Flag. *Carolyn F. Bowman and Corbett W. Bowman v. Board of Supervisors of Prince Edward County, Virginia, et al.*, Court of Appeals of Virginia, Record No. 0995-24-2.

### D.  CRIMINAL PROSECUTION OF THE BOWMANS FOR THEIR PROTECTED SPEECH.

96.     After the County prevailed in the Circuit Court on the appeal of the Flag size it commenced criminal prosecution of the Bowman: on August 13, 2024, Defendant Love charged the Bowmans by Summons alleging that they violated sections 3-401.1(9)(A) and 3-104.1 of the Prince Edward County Code (Zoning):

> [O]n or about 08/13/2024, within this ... Prince Edward ... COUNTY you did unlawfully The official flag of a government, government agency, public institution, religious body, or other similar entity, or flags flown on a temporary basis for the purpose of honoring holidays. Flags may also be used as part of a permanently maintained entrance or inner design feature of a residential or commercial development, provided that the number of flags is no more than three. The maximum area for flags shall be subject to an overall maximum site allowance of 120 square feet. Flagpoles shall have a height of 20 feet exception in the A1, A2, C1, I1 and CR districts in which a taller flagpole will be allowed with the issuance of a special permit;
> In violation of Section 3-401.1(9)(A)/3-104.1, Ordinance of this ... County ....

*See Commonwealth of Virginia v. Carolyn F. Bowman*, Prince Edward General District Court, Case No. GC24004635-00; *Commonwealth of Virginia v. Corbett W. Bowman*, Prince Edward General District Court, Case No. GC24004632-00.[14]

---

[14] A section number 3-401.1 or 3-401.1(9) cannot be found in the Prince Edward County Code (*see*  https://www.co.prince-edward.va.us/Departments/Community-Development/Planning-Zoning, last visited March 10, 2026, at 4:20 PM. However, the Summonses parroted the language of Prince Edward County Code § 3-104.1(9)(a).

31

97. The Summonses were issued "based on the sworn statements of [Defendant] [] Love[,] Prince Edward County, Complainant."

98. On April 3, 2025, Plaintiffs were found guilty in the Prince Edward General District Court of violating section 3-104.1(9)(A) of the Prince Edward County Code (Zoning).

99. On April 3, 2025, Plaintiffs appealed their convictions to the Prince Edward Circuit Court; appeal is pending. *See Commonwealth of Virginia v. Carolyn F. Bowman*, Prince Edward Circuit Court, Case No. CR25000167-00; *Commonwealth of Virginia v. Corbett W. Bowman*, Prince Edward Circuit Court, Case No. CR25000168-00.

100. The enactment and enforcement of the PECVZO amendments burden protected communicative activity, *i.e.*, Plaintiffs' flying of the Flag.

101. The ordinance amendments, which include flagpole height restrictions, with arbitrary and capricious exceptions for certain zoning districts and/or upon issuance of a special use permit, burden viewpoint-specific flags such as the Flag.

102. Flagpole height dictates the size of the flag to be flown, and thus, the arbitrary and capricious restriction consequently burdens communicative speech conveyed by flags. "The general guideline is that the flag's length (the longer side) should be about one-quarter to one-third of the flagpole's height." *https://www.libertyflagpoles.com/blogs/libertyblog/how-to-choose-the-right-flag-size-for-your-pole*, last visited May 26, 2026, at 10:18 AM. *Also see* https://ederflag.com/blogs/news/flag-size-guide-pick-the-right-american-flag-for-your-flagpole, last visited May 26, 2026, at 10:20 AM; https://www.gettysburgflag.com/flagpole-ratio, last visited May 26, 2026, at 10:32 AM; *https://www.flagandbanner.com/flags/what-size-flag-to-use.asp*, last visited May 26, 2026, at 10:33 AM; *and https://www.showallegiance.com/pages/flag-size-guide*, last visited May 26, 2026, at 10:34 AM.



*https://www.flagpolestore.com/flag-sizing-chart/*, last visited May 26, 2026, at 10:22 AM. "The

National Association of Architectural Metal Manufacturers (NAAMM) provides criteria for

determining the appropriate flag size based on the height of the flagpole. Use these tables to

match the right flag to your flagpole — whether you know the pole height, the desired flag size,

or both." https://www.flagdesk.com/flagpole-height-flag-size#in-ground-flagpoles, last visited

May 26, 2026, at 10:30 AM.

103.    The enactment and enforcement of the ordinance amendments constitute a

content-based restriction on speech; Defendants' actions were motivated by an intent to restrict,

prevent, and suppress Plaintiffs' expression of their speech through the Flag.

104.    The ordinance amendments are not narrowly tailored to serve a compelling

government interest, and less burdensome alternatives exist.

105.    Instead, the amendments impermissibly suppress Plaintiffs' protected expression

on private property.

106.    The amendments are arbitrary and capricious, especially as applied to Plaintiffs'

property.

107.    Defendants intentionally and knowingly enacted and enforced the unconstitutional

ordinance amendments against Plaintiffs, after having issued the Bowmans a Permit to install a

flagpole from which to fly a flag up to 900-square feet, and after citizens complained about the Flag.

108.    Defendants continue to enforce the unlawful ordinance amendments after a court ruled that Plaintiffs have a vested property interest in the flagpole.

109.    The ordinance amendments, on their face and as applied to Plaintiffs' Flag, contravene the First Amendment, as incorporated by the Fourteenth Amendment, and the Equal Protection Clause, as well as Article I, § 12 of the Constitution of Virginia.

110.    Moreover, Defendants have intentionally treated Plaintiffs differently from other citizens similarly situated, *i.e.*, other citizens flying flags communicating a different viewpoint, such as the American flag, without any rational basis for the difference in treatment.

111.    Prior to March 2022, Defendants allowed similarly-situated citizens to fly flags other than the Confederate flag without any restrictions as to flagpole height or flag size.

112.    Also, since March 2022, and notwithstanding the emergency and other amendments to the PECVZO, as alleged herein, Defendants have allowed and continue to permit residents similarly-situated to Plaintiffs to fly flags other than the Confederate flag that violated and continue to violate the emergency and permanent amendments to the PECVZO.

113.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable harm, including, but not limited to suppression of their free speech rights, pursuant to the First Amendment and Article I, § 12 of the Constitution of Virginia; disproportionate treatment from citizens similarly situated, in violation of the Equal Protection Clause and Article I Section 1 of the Constitution of Virginia, emotional distress, and the threat of significant monetary penalties.

34

114.    Plaintiffs have incurred significant legal fees to defend themselves before administrative and court proceedings.

**COUNT I:    VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH AGAINST ALL DEFENDANTS**

115.    The foregoing paragraphs are asserted and re-alleged as if fully set forth herein.

116.    Plaintiffs followed the proper procedures and permitting requirements to erect the flagpole and display the Flag from that flagpole.

117.    The Flag is constitutionally protected speech: *See Spence v. Washington*, 418 U.S. 405, 410, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974); *see also Barr v. Lafon*, 538 F.3d 554, 569 n.7 (6th Cir. 2008) ("[T]he display of the Confederate flag by a student constitutes political speech that is protected under the First Amendment ….").

118.    Defendants' actions were prompted solely by speech conveyed by Plaintiffs' display of the Flag.

119.    Defendants' actions as alleged herein, while appearing neutral on their face, were and are intended to and have the effect of violating Plaintiffs' constitutional right to freedom of speech pursuant to the First Amendment of the Constitution of the United States.

120.    Defendants put forth no justification for amending the PECVZO, *i.e.,* put forth no facially neutral and/or valid justification for the amendments: the amendments are, in fact, based on the desire to suppress Plaintiffs' point of view: neither safety nor esthetic concerns justify the zoning amendments.

121.    The PECVZO amendments, emergency and permanent, as alleged herein, were "plainly 'adopted by the [Defendants] because of disagreement with the message' that the regulated speech conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015).

122. "[A] regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 74, 142 S. Ct. 1464, 1474 (2022).

123. The amendments targeted the Plaintiffs in order to target their message expressed through the Flag.

124. Thus, the amendments, while viewpoint-neutral on their face, were and are impermissibly aimed at a particular viewpoint.

125. The amendments to the PECVZO provide discretion in the form of exemptions and the special use permit process that further render the amendments unconstitutional.

126. Exemptions, *e.g.,* "public service noncommercial signs and markers such as highway signs and historical markers, and the flags of the United States and the [C]ommonwealth" (PECVZO § 3-104.1), and special use permit process grant discretion that can be unconstitutionally enforced (*Id.* § 3-104.1(9)(a)), to include treating some speech more favorably than other speech. *See City of Ladue v. Gilleo*, 512 U.S. 43, 47, 114 S. Ct. 2038, 2041 (1994).

127. The First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits the abridgment of freedom of speech, including symbolic expression of political, social, and commercial ideas.

128. Defendants' enactment and enforcement of the zoning ordinance amendments alleged herein burden speech because the display of a flag of any given size, to include the Flag, is communicative activity, and the ordinance amendments unlawfully restrict and are specifically

aimed to target Plaintiffs' communicative activity, in violation of the First Amendment to the United States Constitution.

129.   Defendants' enactment and enforcement of the ordinance amendments was motivated by a content-based purpose, *i.e.*, to suppress Plinitffs' speech as expressed through the Flag, and thus, constitute content-based regulation of protected speech, in violation of the First Amendment to the United States Constitution, enforceable through 42 U.S.C. § 1983.

130.   The ordinance amendments fail strict scrutiny, as they are not the least restrictive means to achieve any asserted government interest (and the government has not expressed any interest), and less burdensome alternatives exist.

131.   Alternatively, the ordinance amendments fail intermediate scrutiny in that they are not narrowly tailored to serve a significant government interest (and the government has not expressed any interest) and fail to leave open ample alternative channels of communication; the ordinance amendments do not uphold content-neutral time, place, and manner restrictions.

132.   Defendants' actions were taken under color of state law and have deprived Plaintiffs of rights secured by the Constitution.

133.   As a direct and proximate result of Defendants' violations of Plaintiffs' right to free speech, Plaintiffs have suffered damages in an amount to be proven at trial, including but not limited to compensatory damages, nominal damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

COUNT I PRAYER FOR RELIEF

134.   WHEREFORE, Plaintiffs move for declaration that Defendants' actions violate the First Amendment to the Constitution of the United States.

37

135.   WHEREFORE, Plaintiffs move for all compensatory damages to which they are entitled by law, for their costs and attorney's fees incurred as provided by law, and for such other relief as the Court deems necessary to make them whole.

136.   WHEREFORE, the Defendants acted intentionally and knew or should have known that the enactment and enforcement of the zoning ordinance amendments violated Plaintiffs' right to free speech, and Plaintiffs pray this Court would award them punitive damages in an amount to be determined as provided by law.

**COUNT II:   VIOLATION OF RIGHT TO FREE SPEECH PURSUANT TO ARTICLE I, § 12 OF THE CONSTITUTION OF VIRGINIA AGAINST ALL DEFENDANTS**

137.   The prior paragraphs 1 through 136 (which also incorporates preceding unnumbered paragraphs) are asserted and re-alleged as if fully set forth herein.

138.   The Flag is protected speech under the Constitution of Virginia.

139.   "The protection given to free speech by the Constitution of Virginia is 'coextensive with the free speech provisions of the Federal First Amendment.'" *Delosreyes v. Botetourt Cty. Pub. Sch.*, Civil Action No. 7:24-cv-00525, 2025 U.S. Dist. LEXIS 153385, at *13 n.5 (W.D. Va. Aug. 7, 2025), *quoting Vlaming v. West Point School Board*, 302 Va. 504, 895 S.E. 2d. 705, 737 (Va. 2023) (*quoting Elliott v. Commonwealth*, 267 Va. 464, 593 S.E.2d 263 (Va. 2004)) (applying First Amendment jurisprudence to Article 1, Section 12 of the Constitution of Virginia).

140.   Defendants' actions as alleged herein, while appearing neutral on their face, were and are intended to and have the effect of violating Plaintiffs' constitutional right to freedom of speech pursuant to Article I, Section 12 of the Constitution of Virginia.

141.    Article I, Section 12 of the Constitution of Virginia prohibits the abridgment of freedom of speech, including symbolic expression of political, social, and commercial ideas.

142.    Defendants' enactment and enforcement of the zoning ordinance amendments alleged herein burden speech because the display of a flag of any given size, to include the Flag, is communicative activity, and the ordinance amendments unlawfully restrict and are specifically aimed to target Plaintiffs' communicative activity, in violation of Article I, Section 12 of the Constitution of Virginia.

143.    Defendants' enactment and enforcement of the ordinance amendments was motivated by a content-based purpose, *i.e.*, to suppress Plinitffs' speech as expressed through the Flag, and thus, constitute content-based regulation of protected speech, in violation of Article I, Section 12 of the Constitution of Virginia.

144.    As a direct and proximate result of Defendants' violations of Plaintiffs' right to free speech, Plaintiffs have suffered damages in an amount to be proven at trial, including but not limited to compensatory damages, nominal damages, and attorney's fees pursuant to Article I, Section 12 of the Constitution of Virginia.

COUNT II PRAYER FOR RELIEF

145.    WHEREFORE, Plaintiffs move for declaration that Defendants' actions violate Article I, Section 12 of the Constitution of Virginia.

146.    WHEREFORE, Plaintiffs move for all compensatory damages to which they are entitled by law, for their costs and attorney's fees incurred as provided by law, and for such other relief as the Court deems necessary to make them whole.

147.    WHEREFORE, the Defendants acted intentionally and knew or should have known that the enactment and enforcement of the zoning ordinance amendments violated

39

Plaintiffs' right to free speech, and Plaintiffs pray this Court would award them punitive damages in an amount to be determined as provided by law.

## COUNT III:    FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM AGAINST ALL DEFENDANTS

148.    The prior paragraphs 1 through 114 (which also incorporates preceding unnumbered paragraphs) are asserted and re-alleged as if fully set forth herein.

149.    The Equal Protection Clause of the Fourteenth Amendment guarantees Plaintiffs the right to equal protection of the laws, including the right to be free from suppression of protected speech.

150.    At all times relevant, Defendants were acting under color of state law within the meaning of 42 U.S.C. § 1983.

151.    By virtue of the content of their speech via the Flag Plaintiffs are part of a protected class.

152.    Plaintiffs are entitled to the equal protection of the laws, pursuant to the Fourteenth Amendment to the Constitution of the United States.

153.    Defendants denied Plaintiffs the right to equal protection of the laws when they treated Plaintiffs differently than citizens similarly situated to them without any rational basis for the difference in treatment; selective treatment was based on impermissible considerations such as the content of their speech.

154.    The historical record, as alleged herein, *e.g., inter alia,* complaints received by Defendants about the Flag, passing emergency zoning ordinance amendments outside the normal legislative process, lacking any legitimate basis to suddenly and urgently amend the zoning ordinance as to flags and flagpoles, and comments by Defendants and their agents about the

40

reasoning for the zoning ordinance amendments, demonstrates that Defendants acted to deny Plaintiffs equal protection of the laws due to the content of their speech.

155. Defendants were motivated by a desire to deny Plaintiffs equal protection of the laws in being able to express their speech as is their right pursuant to the First Amendment of the Constitution of the United States and Article I, Section 12 of the Constitution of Virginia.

156. Prior to March 2022, Defendants allowed similarly situated citizens, to fly flags other than the Confederate flag without any restrictions as to flagpole height or flag size.

157. Also, since March 2022, and notwithstanding the emergency and other amendments to the PECVZO as alleged herein, Defendants have allowed and continue to permit residents similarly situated to Plaintiffs to fly flags other than the Confederate flag that violated and continue to violate the emergency and permanent amendments to the PECVZO.

158. The strict scrutiny test is applied whenever a law interferes with certain fundamental rights, including free speech.

159. No compelling interest existed or exists to justify Defendants' actions against Plaintiffs.

160. Defendants' unequal treatment of Plaintiffs was not necessary to promote or further any legitimate government interest.

161. As a direct and proximate result of Defendants' actions Plaintiffs have been denied the equal protection of the laws and have suffered damages in an amount to be proven at trial, including but not limited to compensatory damages, nominal damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

COUNT III PRAYER FOR RELIEF

162.    WHEREFORE, Plaintiffs move for a declaration that Defendants' actions violate the Equal Protection Clause to the Constitution of the United States.

163.    WHEREFORE, Plaintiffs move for all compensatory damages to which they are entitled by law, for their costs and attorney's fees incurred as provided by law, and for such other relief as the Court deems necessary to make them whole.

164.    WHEREFORE, the Defendants acted intentionally and knew or should have known that the enactment and enforcement of the zoning ordinance amendments violated Plaintiffs' right to equal protection, and Plaintiffs pray this Court would award them punitive damages in an amount to be determined as provided by law.

**COUNT IV:   VIOLATION OF EQUAL PROTECTION PURSUANT TO THE ARTICLE I, SECTION 1 OF THE CONSTITUTION OF VIRGINIA.**

165.    The prior paragraphs 1 through 114 (which also incorporates preceding unnumbered paragraphs) are asserted and re-alleged as if fully set forth herein.

166.    The equal protection clause of Article I, Section 1 of the Constitution of Virginia guarantees Plaintiffs the right to equal protection of the laws, including the right to be free from suppression of protected speech.

167.    By virtue of the content of their speech via the Flag, Plaintiffs are part of a protected class.

168.    Plaintiffs are entitled to the equal protection of the laws, pursuant to Article I, Section 1 of the Constitution of Virginia.

169.    Defendants denied Plaintiffs the right to equal protection of the laws when they treated Plaintiffs differently than citizens similarly situated to them without any rational basis for

42

the difference in treatment; selective treatment was based on impermissible considerations such as the content of their speech.

170.   The historical record, as alleged herein, *e.g., inter alia,* complaints received by Defendants about the Flag, passing emergency zoning ordinance amendments outside the normal legislative process, lacking any legitimate basis to suddenly and urgently amend the zoning ordinance as to flags and flagpoles, and comments by Defendants and their agents about the reasoning for the zoning ordinance amendments, demonstrates that Defendants acted to deny Plaintiffs equal protection of the laws due to the content of their speech.

171.   Defendants were motivated by a desire to deny Plaintiffs equal protection of the laws in being able to express their speech as is their right pursuant to the First Amendment of the Constitution of the United States and Article I, Section 12 of the Constitution of Virginia.

172.   Prior to March 2022, Defendants allowed similarly situated citizens, to fly flags other than the Confederate flag without any restrictions as to flagpole height or flag size.

173.   Also, since March 2022, and notwithstanding the emergency and other amendments to the PECVZO as alleged herein, Defendants have allowed and continue to permit residents similarly situated to Plaintiffs to fly flags other than the Confederate flag that violated and continue to violate the emergency and permanent amendments to the PECVZO.

174.   No compelling interest existed or exists to justify Defendants' actions against Plaintiffs.

175.   Defendants' unequal treatment of Plaintiffs was not necessary to promote or further any legitimate government interest.

176. As a direct and proximate result of Defendants' actions Plaintiffs have been denied the equal protection of the laws and have suffered damages in an amount to be proven at trial, including but not limited to compensatory damages, nominal damages, and attorney's fees.

COUNT IV PRAYER FOR RELIEF

177. WHEREFORE, Plaintiffs move for a declaration that Defendants' actions violate Article I, Section 1 of the Constitution of Virginia.

178. WHEREFORE, Plaintiffs move for all compensatory damages to which they are entitled by law, for their costs and attorney's fees incurred as provided by law, and for such other relief as the Court deems necessary to make them whole.

179. WHEREFORE, the Defendants acted intentionally and knew or should have known that the enactment and enforcement of the zoning ordinance amendments violated Plaintiffs' right to equal protection, and Plaintiffs pray this Court would award them punitive damages in an amount to be determined as provided by law.

## COUNT V:   *MONELL* CLAIM AGAINST ALL DEFENDANTS

180. The preceding paragraphs (including the unnumbered paragraphs) are asserted and re-alleged as if fully set forth herein.

181. At all times relevant, Defendants Board of Supervisors, BZA, and Love had final policy making authority.

182. The PECVZO amendments constitute an express policy of Defendants BOS.

183. Defendants Board of Supervisors' enactment and enforcement of the ordinance amendments constitutes unconstitutional action pursuant to an official policy or custom.

184. Defendant BZA approved of, affirmed and ratified Defendant Love's Notice of Violation issued to Plaintiffs regarding the size of the Flag.

44

185. Defendant Love's enforcement of the ordinance amendments constitutes unconstitutional action pursuant to an official policy or custom.

186. Additionally, or in the alternative, Defendant Board of Supervisors and/or Defendant BZA delegated final policy making authority to Defendant Love and ratified his unconstitutional actions of erroneously enforcing zoning ordinances.

187. Defendants' actions were taken under the color of state law and have deprived Plaintiffs of rights secured by the Constitution.

Count V PRAYER FOR RELIEF

188. WHEREFORE, Plaintiffs move for all compensatory damages to which they are entitled by law, for their costs and attorney's fees incurred as provided by law, and for such other relief as the Court deems necessary to make them whole.

189. WHEREFORE, the Defendants acted intentionally and knew or should have known that the enactment and enforcement of the zoning ordinances, to include the ordinance amendments, violated Plaintiffs' right to free speech, and Plaintiffs pray this Court would award them punitive damages in an amount to be determined as provided by law.

**PRAYER FOR INJUNCTIVE RELIEF**

190. The preceding paragraphs (including the unnumbered paragraphs) are asserted and re-alleged as if fully set forth herein.

191. Plaintiffs move this Court to enjoin, prevent, and prohibit Defendants from further acts to enforce the amended PECVZO as to the Flag and flagpole during the pendency of this Action, and for a permanent injunction enjoining, preventing, and prohibiting enforcement of the amended PECVZO as it pertains to Plaintiffs' Flag and flagpole.

192. Defendants have and continue to violate Plaintiffs' constitutional rights.

45

193.    Plaintiffs are likely to succeed on the merits of at least one of the Counts alleged herein.

194.    Plaintiffs are suffering irreparable harm and will likely suffer irreparable harm, as alleged herein, absent the granting of the requested preliminary relief, in the form of continuing violation of their constitutional rights.

195.    The balance of the equities weighs in its favor of granting the preliminary injunction.

196.    A preliminary injunction is in the public interest.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,
CAROLYN BOWMAN and
CORBETT BOWMAN

*/s/ Melvin E. Williams*
Of Counsel

Melvin E. Williams (VSB No. 43305)
MEL WILLIAMS PLC
1320 Third Street, SW
Roanoke, Virginia 24016
540-266-7800
540-206-3857 *facsimile*
mel@melwilliamslaw.com
*Counsel for Plaintiffs Carolyn Bowman and Corbett Bowman*